baby was healthy and it was happy and it was okay.

And at 8:15 that night, even though this is an autopsy picture, for all practical purposes, that baby was dead.

In the course of four hours and 15 minutes something happened to that baby. This case comes down to four hours and 15 minutes. Because when that baby showed up at Jackson's house it was for all intent and purposes, dead. Something happened in that four hours and 15 minutes. And, ladies and gentlemen, it was more than falling out of the defendant's arms. This baby was beaten and he was shaken and it caused that brain sheer and it caused that fracture and it was tantamount to mixing egg yolks and white because, ladies and gentlemen, once that injury happened, at 14021 Minnick Road, it could not be undone. This case comes down to 4:00 and 8:15. Ask yourself what happened during that period of time? And is it really explained by what the defendant told everybody in this case?

THE COURT: Members of the jury, the evidence and arguments in this case have been completed and I will instruct you as to the law. That is, I will explain the law as it applies to this case.

Following the instructions I'm about to give you, you will go to the jury room to deliberate and decide on your verdict.

Remember, you are sworn to deliberate and decide this





FORM SMI-25 PENGAD/INDY 1-800-631-6989

case and return a just and true verdict based only on the evidence and my instructions on the law.

Sympathy or prejudice must not influence your decision.

It is my duty as Judge to instruct you on the law you are to apply to this case and it is your duty to follow the law as it is given to you.

If a lawyer says something different about the law, follow what I say.

From time to time you've already been given some instructions. You should consider all of my instructions as a connected series which together form the law you are to follow.

You should not pick out one or some instructions and disregard others.

It is your duty as jurors to germinate facts. You are the sole and exclusive judge of the facts. You, alone, determine the weight, the effect, and the value of the evidence as well as the believability of the witnesses.

You must consider in weighing the testimony of all the witnesses and evidence. You, alone, are to determine whether to believe any witness or evidence at any extent to which any witness or evidence should be believed. Your decision as to any facts in this case is final.

A person accused of a crime is presumed to be innocent. This means you must start with the idea that the defendant





FORM SMI-25 PENGAD/INDY 1-800-631-6989

is innocent. This presumption continues throughout the trial and entitles the defendant to a verdict of not guilty unless you are satisfied beyond a reasonable doubt that the defendant is guilty.

The defendant is not required to prove the defendant's innocence or to produce any evidence.

Every crime is made up of parts called elements. The prosecutor must prove each element of a crime beyond a reasonable doubt. If you find the prosecutor has not proven every element beyond a reasonable doubt, then you must find the defendant not guilty.

A reasonable doubt is a fair, honest doubt growing out of the evidence or lack of evidence. It is not an imaginary or possible doubt, but a doubt based on reason and common sense. A reasonable doubt is just that, a doubt that is reasonable, under the facts of this case, after a careful consideration of the evidence.

When you discuss the case and decide on your verdict you may only consider the evidence that has been properly admitted in this case. Therefore, it's important for you to understand what is evidence and what is not evidence.

Evidence includes only the sworn testimony of witnesses and the exhibits admitted into evidence, together with any other matter the Court has specifically told you to consider as evidence.





FORM SM-25 PENGAD/INDY 1-800-631-6989

Many things are not evidence. You must be careful not to consider them as such. I will now describe some of the things that are not evidence. The fact the defendant's charged with a crime and is on trial is not evidence. The lawyer's statements and arguments are not evidence. They are only meant to help you understand the evidence and each sides legal theories. The lawyers questions to the witnesses are also not evidence. You should consider these questions only as they give meaning to the witnesses' answers. You should only accept things the lawyers say that are supported by the evidence or by your own common sense and general knowledge.

My comments, rulings, questions, and instructions are also not evidence. It is my duty to see that the trial is conducted according to the law and to tell you the law as it applies to this case. However, when I make a comment or give an instruction I'm not trying to influence your vote or express a personal opinion about the case. If you believe I have an opinion about how you should decide this case, you must pay no attention to that opinion. You are the only judge of the facts and you should decide this case from the evidence.

At times during the trial I may exclude evidence that was offered or strike testimony that was heard. Do not consider those things in deciding the case. Make your





FORM SMI-25 PENGAD/INDY 1-800-631-6989

decision only on the evidence I let in and nothing else.

You should use your own common sense and general knowledge in weighing and judging the evidence, but you should not use any personal knowledge you may have about a place, person, or event. I repeat once more. You must decide this case based only on the evidence admitted during this trial.

As I said before, it's your job to decide what the facts of this case are. You must decide which witnesses you believe and how important you think their testimony is. You do not have to accept or reject everything a witness said. You're free to believe all, none, or part of any person's testimony.

In deciding which testimony you believe you should rely on your own common sense and every day experience. There's no fixed set of rules for judging whether you believe a witness, but it may help you to think about these questions.

Was the witness able to clearly see, hear, or know what the witness testified to?

How long was the witness watching or listening?

Was anything else going on that might have distracted the witness?

Did the witness seem to have a good memory?

How did the witness look and act while testifying?

Did the witness seem to be making an honest effort to



TRANSCRIPTS UNLIMITED, INC.

FORM SMI-25 PENGAD/INDY 1-800-631-6989

tell the truth or did the witness seem to evade the questions or argue with the lawyers?

Does the witness' age and maturity affect how you should judge the witness' testimony?

Does the witness have any bias, prejudice, or personal interest in how this case is decided?

Have there been any promises, threats, suggestions, or other influences that affected how the witness testified?

In general, does the witness have any special reason to tell the truth or a special reason to lie?

All in all, how reasonable does the witness' testimony seem when you think about all the other evidence in the case?

The defendant has the right to take the stand and become a witness on his own behalf. It is your duty to consider his testimony by the same standards as you would that of any other witness who has appeared on the stand.

Some times the testimony of different witnesses will not agree and you must decide which you accept. You should think about whether this disagreement involves something important or not and whether you think someone is lying or is simply mistaken. People see and hear things differently and a witness may testify honestly but simply be wrong with what they thought they saw or remembered.

It's also a good idea to think about which testimony





FORM SMI-25 PENGAD/INDY 1-800-631-6989

agrees best with the other evidence in this case.

You may conclude that the witness deliberately lied about something that's important in how you decide the case. If so, you may choose not to accept anything that witness said. On the other hand, if you think the witness lied about some things but told the truth about others, you may simply accept the part you think is true and ignore the rest.

You've heard the lawyer, or the lawyer's representative, talk to one of the witnesses. There is nothing wrong with this. A lawyer or the lawyer's representative may talk to a witness to find out what the witness knows about the case and what the testimony of the witness will be.

Facts can be proved by direct evidence from a witness or an exhibit. Direct evidence is evidence about what we actually see or hear. For example, if you look outside and see rain falling, that is direct evidence that it is raining. Facts can also be proved by indirect or circumstantial evidence. Circumstantial evidence is evidence that normally and reasonably leads to other facts. So, for example, if you see a person come in from outside wearing a raincoat and other clothing all covered with small drops of water that would be circumstantial evidence that it is raining.





FORM SMI-25 PENGAD/INDY 1-800-631-6989

You may consider circumstantial evidence. Circumstantial evidence, by itself, or a combination of circumstantial evidence and direct evidence can be used to prove any or all the elements of a crime. In other words, you should consider all the evidence including all circumstantial evidence that you believe.

The evidence must convince you beyond a reasonable doubt that the crime occurred on or about May 8th, 1998, within the Township of Chikaming, Berrien County, Michigan.

The defendant is charged with a crime of Second Degree Murder. To prove this charge the prosecutor must prove each of the following elements beyond a reasonable doubt.

First, that the defendant caused the death of David McBain. That is, that David McBain died as a result of being struck or beaten by the defendant, resulting in death.

Second, that the defendant had one of these three states of mind: He intended to kill, or he intended to do great bodily harm to David McBain, or he knowingly created a very high risk of death or great bodily harm knowing death or such harm was the likely result of his actions.

Third, that the killing was not excused.

You may also consider the lesser charge of Involuntary Manslaughter. To prove this charge the prosecutor must prove each of the following elements beyond a reasonable

Tape 99B-0022-A, 2-22-99, 4:47





FORM SMI-25 PENGAD/INDY 1-800-631-6989

doubt:

First, that the defendant caused the death of David McBain. That is that David McBain died as a result of blunt force trauma, resulting in death, caused by the defendant.

Second, in doing that act that caused David McBain's death, the defendant acted in a grossly, negligent manner.

Gross negligence means more than carelessness. It means willfully disregarding the results to others that might follow from an act or a failure to act.

In order to find the defendant was grossly negligent you must find each of the following three things, beyond a reasonable doubt:

First, that the defendant knew of the danger to David McBain, that is, he knew that there was a situation that required him to take ordinary care to avoid injuring David McBain.

Second, that the defendant could have avoided injuring David McBain by using ordinary care.

Third, that the defendant failed to use ordinary care to prevent injuring David McBain when to a reasonable person it must have been apparent that the result was likely to be serious injury or death and the killing was not excused.

Now then we have here in a box, on a page, a -- an element chart. I want you to understand that this is intended to be an aid to you and is to be a shorthand





FORM SMI-25 PENGAD/INDY 1-800-631-6989

rendition of what I've said in a larger number of words.

If you find anything in this box which is inconsistent with the other instructions or which you cannot conform to the other instructions, then you're to follow the other instructions. This is merely a shorthand aid and is not to override any other instructions. Okay?

I'll read the boxed material anyway.

Element chart, Second Degree Murder and Involuntary Manslaughter. For Second Degree Murder, the victim's death, caused by the defendant. The defendant actually intended to kill victim or the defendant intended to do great bodily harm to the victim or the defendant knowingly created a very high risk of death or great bodily harm, knowing that death or some such harm was the likely result of his actions, and death not excused, for Involuntary Manslaughter.

The victim's death caused by the defendant. The defendant acted in a grossly, negligent manner, death not excused.

If the defendant unlawfully injured David McBain and started a series of events that naturally or necessarily resulted in David McBain's death, there would be no defense that the immediate cause of death was medical treatment.

A would-be a defense, however, if the medical treatment was grossly erroneous or grossly unskillful and the injury might not have caused death if David McBain had not received





FORM SMI-25 PENGAD/INDY 1-800-631-6989

such treatment.

In this case, there are two difference crimes that you may consider. When you discuss the case you must consider the crime of Second Degree Murder first. If you agree that he guilty of that crime you may stop your discussions and return your verdict. If you believe that the defendant's not guilty of Second Degree Murder or if you cannot agree about that crime, you should consider the less serious crime of Involuntary Manslaughter. You decide how long to spent on Second Degree Murder before discussing Involuntary Manslaughter.

If you go back to second degree after discussing a more serious charge, if you want to.

When you go to the jury room you should first choose a foreman. The foreman should see to it that your discussions are carried on in a businesslike way and that everyone has a fair chance to be heard.

In a criminal case, any verdict you reach must be unanimous. In other words, you must all agree on it. To find the defendant guilty every one of you must be convinced beyond a reasonable doubt that the evidence proves the defendant is guilty. To return a verdict of not guilty every one of you must agree the prosecutor's has failed to prove the defendant is guilty beyond a reasonable doubt. Either way, you must all agree in order to return a verdict.





FORM SM-25 PENGAD/INDY 1-800-631-6989

It is your duty as jurors to talk to each other to make every reasonable effort to reach agreement. Express not only your opinions but also the reasons for them and keep an open mind as you listen to your fellow jurors. Rethink your opinions and do not hesitate to change your mind if you decide you were wrong. Try your best to work out your differences. However, although you should try to reach agreement, none of you should give up your honest opinion about the case just because other jurors disagree with you or just for the sake of reaching a verdict.

In the end, your vote must be your own. You must vote honestly and in good conscious.

Possibly penalty should not influence your decision. It's the duty of the judge to fix the penalty within the limits provided by law whenever any defendant's found guilty.

If you want to communicate with the judge while you're in the jury room please have your foreman write a note and give it to the Bailiff. Until after a verdict is reached and returned it is not proper for you to talk directly with the judge, lawyers, police officers, witnesses, or other people involved in the case, even if your discussion has nothing to do with the case.

As you discuss the case you must not let anyone, even the judge, know how your voting stands. Therefore, until





FORM SMI-25 PENGAD/INDY 1-800-631-6989

you return with a unanimous verdict do not reveal how your voting stands to anyone outside the jury room.

If you want to look at any or all the exhibits that have been admitted just ask for them.

When you go to the jury room you'll have a written copy of the instructions you've just heard. As you discuss the case you must think about all my instructions together as the law you are to follow. Mark only one box. The possible verdicts are: Guilty as charged of Murder in the Second Degree, Guilty of the lesser included offense of Manslaughter, and Not Guilty.

Counsel, did I instruct the jurors as I said I would?

MR. CHERRY: Yes.

MR. McDOWELL: Yes, sir.

THE COURT: Any errors, omissions, or objections that I've not dealt with?

MR. McDOWELL: None.

MR. CHERRY: No.

THE COURT: Okay. For use by your foreman, I will give the Bailiff an extra copy of the last sheet so that there's a form of verdict to be marked and signed by the foreman and returned at the completion of the case.

And, with that, since we now have only 12 jurors remaining swear the officer.

THE COURT CLERK: Do you solemnly swear -- excuse me --





FORM SMI-25 PENGAD/INDY 1-800-631-6989

do you solemnly swear that you will to the utmost of your ability keep the persons sworn as jurors on this trial from separating from each other, that you will not suffer any communication to be made to them or any of them orally or otherwise, and you will not communicate with them or any of them orally or otherwise, except by order of the Court or to ask them if they have agreed upon their verdict until they shall be discharged, and that you will not, before they render their verdict, communicate to any person the state of their deliberations or the verdicts they have agreed upon, so help you God?

THE COURT OFFICER: I will.

(At 4:54 p.m., Bailiff sworn to take charge of jury)

THE COURT OFFICER: All rise.

(At 4:54 p.m., jury retired for deliberation)

THE COURT: Okay. The jury room door is now closed.

Counsel, may we agree that the exhibits that have been admitted may all be placed on the table right in front of the bench and that should the jurors request the exhibits that the Bailiff may, without the necessity of reconvening court, simply hand all the exhibits to the jurors without comment?

MR. CHERRY: Yes.

MR. McDOWELL: Yes.

THE COURT: All right. Now, another matter we need to





FORM SM-25 PENGAD/INDY 1-800-631-6989

deal with --

You -- you can be seated.

It's about six minutes to 5:00. I think that with a case of this duration a verdict by 5:00 would be astounding, totally unbelievable.

So, I don't know how long they're going to deliberate, but as I've told the attorneys before I -- I once had a case where we had a bittle -- a brittle diabetic in the jury box and no one said anything about that, but she had to eat right on schedule or get into big trouble. And so, I don't want to run them deep into the night without bringing them back and making some inquiries.

I would propose to bring them in at, oh, probably after they've been out for an hour and at least at that point we'll find out who's foreman and find out whether we need to arrange for dinner for them or -- or what.

I'm just letting this out now so that everybody here knows what's going on.

And if it is necessary to get them some meals we'll take care of that.

In addition, there may be some jurors who have next of kin who are wondering where they've gone to and at that time I would also ask them if they would write any messages that they want delivered, turn them over to the Bailiff, and while they're being taken out to eat, if need be, as I





FORM SM-25 PENGAD/INDY 1-800-631-6989

expect probably will happen in view of the hour, then while they're gone I'll make phone calls to the various family members and let them know where their husbands or wives or whatever are.

Any objection to any of this?

MR. McDOWELL: No.

MR. CHERRY: No.

THE COURT: Mr. McDowell?

MR. McDOWELL: No.

THE COURT: Okay. All right. Rest easy at this point. I have no idea how long it will take. All I know is if we think it will be quick, it will be long and if we think it will be long, it will be quick. But, surest way to lose money is to bet on how long the jury will be out. They'll be out as long as it takes.

I must say also that one last thing that the, I think, that the jurors who are deliberating this appear to have paid good attention to the case and approached it with the solemnity that this case deserves. I also think that it's only fair to say that both of the attorneys have done their absolute, utmost in trying this case and that whatever may be the results it's certainly not affected by any lack of trying or skill or effort on the part of either attorney.

That's all.

THE COURT OFFICER: Court is recessed.





FORM SMI-25 PENGAD/INDY 1-800-631-6989

(At 4:58 p.m., court recessed)

(At 5:56 p.m., court reconvened)

THE COURT OFFICER: Court will resume. Please be seated.

THE COURT: I just wanted to review on the record what the attorneys and I just said, standing here in the courtroom.

The jurors sent out a question and basically I think it's asking for exhibits. I will, of course, will give them the exhibits. No ifs, ands, or buts about that. But, one of the items listed here is -- well, I'll just read it. CAT scan, Lakeland medical records, pictures, Burke's testimony, and pathologist's report.

Well, Burke's testimony, there is no testimony from Burke so that's an impossibility. And pathologist's report, is that --

MR. McDOWELL: That's not in evidence, I don't believe.

THE COURT: Is that in evidence?

MR. CHERRY: No.

MR. McDOWELL: No. That wasn't put into evidence.

THE COURT: Well, can't add it then. Can't give them anything that isn't already in.

So, I'll deal with this question and basically tell him they can have the exhibits and then anything else, they can't have. That's -- that's easy.





FORM SMI-25 PENGAD/INDY 1-800-631-6989

Then, while they're here anyway, I'm going to make inquiries. First of all, find out who's the foreman. And then give them a bunch of alternatives and might as well review those here.

First of all, we can order in dinner. I think we still have that restricted menu, don't we, that --

THE COURT OFFICER: Yeah, I believe I have one.

THE COURT: Okay. Or they can be taken by the Bailiff and clerk to a restaurant and fed. Both ways it can be an expense, but --

Or we could just continue deliberations, if they think they're next to a verdict or something or other and don't want to waste that much time.

Now, another possibility is if there are too exhausted to continue tonight that we might consider sending them home and come back tomorrow to fin -- conclude deliberations.

Anything else?

MR. CHERRY: Nope. That's the options.

MR. McDOWELL: Nope. That's -- I agree with Mr. Cherry.

THE COURT: Okay. I hope that none of the jurors come down with the flu, if the other juror had it, it's the last thing we need.

When they come in just take the pile of exhibits and just plop it on the table in the jury room so that they'll





FORM SMI-25 PENGAD/INDY 1-800-631-6989

be there when they go back into the jury room. But, in the meantime, bring them in and tell them to take the same seats as before.

Okay?

THE COURT OFFICER: All rise, please.

(At 6:00 p.m., jury enters)

THE COURT: Door all the way open? Okay. Same seats.

THE COURT OFFICER: Court will resume. Please be seated.

THE COURT: Ladies and gentlemen, who's the foreman? All right. That's Juror Number 2, in seat number five, I guess.

THE COURT OFFICER: Pass him the mike.

THE COURT: Okay. We have what I'm interpreting as a question, and it reads:

"CAT scan, Lakeland medical records, pictures, Burke's testimony, pathologist's report."

First of all, with regard to all the exhibits -- and when you get back to the jury room the Bailiff will have them on the table in there for you -- all the exhibits that are admitted. It used to be we just handed them to the last juror in line as you were going into the jury room, but then there was some problems with that so the rules were changed and you have to ask. Well, we consider that you've now asked.





FORM SMI-25 PENGAD/INDY 1-800-631-6989

Now, talk about Burke's testimony. Well, first of all, Burke didn't testify. And so there's nothing there that we can do.

The pathologist's report was not admitted into evidence. The pathologist testified, but the pathologist's report, per se, does not seem to be in the evidence. So, therefore, we can't produce that.

So all the exhibits we're just going to turn over to you.

With regard to testimony, if there's a particular part of testimony of a particular witness that you really need to have played back, it can be done, but it -- it will create some problems but that's neither here nor there. It will take a while for the Court Recorder to get the right tape in. She's got to go through all of them and run it back to the right spot and find the part that's needed and then it can be played. And we can play it for you in the courtroom or we can play it for you in the jury room so you can converse among yourselves while watching that part of the testimony.

Now, if a piece of testimony took 80 minutes to record, it will take 80 minutes to play back. In the good old days with a Court Reporter we could produce a rough draft transcript of a day's testimony in 15 minutes, but in the name of progress, we don't have that anymore.





FORM SMI-25 PENGAD/INDY 1-800-631-6989

So, if you do need something more in the way of testimony I don't think there's anything in here you can get at, but if you do need something we -- we would ask that you first try to figure it out using your collective memories. You've got 12 memories which is probably at least 12 times as good as anybody here in the courtroom and someone will certainly remember and when that person speaks up then the rest will probably say, oh, yeah, now I remember, and you'll have the memory restored. But if that doesn't work -- and it does work about 99 percent of the time -- but if it doesn't work and you really need something played back it can be done, but it's not easy. And it might take us a half an hour to find the right spot and to play it back for you. And then it takes as long to play back as -- as it takes. Okay. That's about all I can say with regard to that stuff.

Now, since you're a captive audience and you're back in the courtroom anyway, I was going to bring you in at 6:00 no matter what.

Once upon a time I had a lady in the jury box who was a brittle diabetic. She had to eat right on schedule or be in big trouble. That sensitized me and kept me from ever after from just running on into the night with jurors. So, I'm going to direct a question to the foreman here and you may need to consult with your fellow jurors back in the jury room before answering.





FORM SMI-25 PENGAD/INDY 1-800-631-6989

We have a number of possibilities. Right now we could give you copies of the menu. I think Max has it. And order --- order in dinner and continue to deliberate while we scurry around and bring the goodies into you. Or we could have the Bailiff and clerk take you out to a restaurant. It would be the same restaurant, same food in either case, across the street and you have a limited selection but you have a selection of food over there and get dinner. Or if you're five minutes from a verdict or any way some brief period of time period of time, obviously, and you don't want to waste the time eating at county expense, you can let us know and you'll just continue deliberating, as you are. And then the fourth possibility is if everybody is just too beat to keep on going then we could, at some point, adjourn until tomorrow and have you people go home, not discuss the case with anybody, and then return tomorrow morning to continue your deliberations.

We probably wouldn't let you go this soon, but that's about all the possibilities I can think of that would apply right now.

So, Mr. Foreman, do you think you have a unanimous position from the -- from the jury on one of those? If so, if you're a brave man, but go ahead and speak up. Otherwise, if you want to consult with your fellow jurors we'll let you go back in the jury room and -- and figure out





FORM SM-25 PENGAD/INDY 1-800-631-6989

what you want and tell the Bailiff and we'll go from there. Okay? Is that what you want to do?

JURY FOREMAN: Yeah.

THE COURT: All right. Let us know.

THE COURT OFFICER: All rise, please.

(At 6:08 p.m., jury retired to continue to deliberate)

(At 6:09 p.m., off record bench conference)

THE COURT: Okay. Well, we'll sit a wait for a while and --

We gave them the exhibits?

THE COURT OFFICER: Yes, I gave them the exhibits.

THE COURT: Okay. Good.

THE COURT CLERK: Do you want me to go off?

THE COURT: Yeah. Let's go off until we have them ready.

(At 6:09 p.m., court recessed)

(At 6:14 p.m., court reconvened)

THE COURT: Okay. We have, "Can people in the gallery hear us?" I don't think so.

MR. McDOWELL: No.

THE COURT: They haven't been loud. I haven't heard. "Order dinner in." And then, "Can smokers get a smoke?"

UNIDENTIFIED VOICE: No. No. Tell them to quit.

THE COURT: Someone -- someone was speaking what I was thinking, but that's --





FORM SMI-25 PENGAD/INDY 1-800-631-6989

We -- this is a no smoking building, and so we -- we can't give them a smoke. On the other hand, if they wanted to walk across the street then they could smoke on the way over.

But their position was order in. Okay. This -- these new ones that have the new name on here. What blew things up last time we had a problem with it was a -- somebody ordered the -- the double lobster and steak and got a $40 meal.

THE COURT OFFICER: I don't think they have anything like that.

THE COURT: I don't think they have anything like that on this menu.

MR. CHERRY: You're just going to pass those in, is that right, Judge?

THE COURT: Yeah.

MR. CHERRY: Okay.

THE COURT: There's nothing in here that should bankrupt the county, although the commissioners will think differently. Got enough there?

THE COURT OFFICER: I don't know. I'm checking.

THE COURT: Well, they can pass it around.

And on one of them, tell them, on one of them to circle and put down how many people are ordering that item so that they don't mess up any sides one of the menus.





FORM SM-25 PENGAD/INDY 1-800-631-6989

Let's see. Did we lose all the lawyers?

THE COURT OFFICER: I guess they all left.

THE COURT: Yeah. Well, just hand them in without comment, except to tell them to only mark on one of them.

THE COURT CLERK: Should I go off?

THE COURT: Yeah, let's go off until they --

(At 6:17 p.m., court recessed)

(At 8:20 p.m., court reconvened))

THE COURT OFFICER: Bring in the jury, your Honor?

(At 8:20 p.m., jury enters with verdict)

THE COURT: Please. And bring me up the foreman verdict.

THE COURT OFFICER: Court will resume. Please be seated.

Here's the jury verdict, your Honor.

THE COURT: Okay. All right.

Mr. Foreman, does the jury have a unanimous verdict?

THE COURT OFFICER: Can I give him the microphone, your Honor?

THE COURT: Oh, yes, please do. I'm glad somebody around here remembers.

JURY FOREMAN: Yes, we do, your Honor.

THE COURT: Mr. Foreman, does the jury have a unanimous verdict?

JURY FOREMAN: Yes, we do.



TRANSCRIPTS UNLIMITED, INC.

FORM SMI-25 PENGAD/INDY 1-800-631-6989

THE COURT: And what is that verdict?

JURY FOREMAN: We, the jury, find the defendant guilty of Second Degree Murder.

THE COURT: Okay. Do you wish the jury polled?

MR. McDOWELL: Yes.

THE COURT: Okay. Ma'am. Just -- if she stays quiet she can stay here. If she stays quiet she can stay here.

You wish to have the jury polled?

MR. McDOWELL: Yes.

THE COURT: Polling is checking to see if the foreman counted all the way up to 12 satisfactorily. So, we'll still need the microphone. And we'll start at the left hand end, the front row. At this -- at this point in the proceedings --

It's either quiet or out.

At this point in the proceedings we address you only by your jury number, but we don't expect you to remember it so we'll give you the number.

Juror Number 29, was your verdict the same as that given by the foreman?

JUROR NUMBER 29: Yes, it was, your Honor.

THE COURT: Okay. Pass the microphone.

Juror Number 17, was your verdict the same as that given by the foreman?

JUROR NUMBER 17: Yes, sir.





FORM SMK-25 PENGAD/INDY 1-800-631-6989

THE COURT: Pass the microphone.

Juror Number 25, was your verdict the same as that announced by the foreman?

JUROR NUMBER 25: Yes, your Honor.

THE COURT: Pass.

Juror Number 16, was your verdict the same as that as given by the foreman?

JUROR NUMBER 16: Yes, your Honor.

THE COURT: Pass it.

Juror Number 4, was your verdict the same as that as given by the foreman?

JUROR NUMBER 4: Yes, it was.

THE COURT: Okay. Juror Number 27, was your verdict the same as that as given by the foreman?

JUROR NUMBER 27: Yes, sir.

THE COURT: Juror Number 30, was your verdict the same as that as given by the foreman?

JUROR NUMBER 30: Yes, it was.

THE COURT: Okay. Now, if you'll come back around here. Okay. Start in the back row.

Juror Number 18, was your verdict the same as that as announced by the foreman?

JUROR NUMBER 18: Yes, it was.

THE COURT: And Juror Number 10, was your verdict the same as that as announced by the foreman?





FORM SMI-25 PENGAD/INDY 1-800-631-6989

JUROR NUMBER 10: Yes, sir.

THE COURT: Juror Number 24 was excused.

Juror Number 37, was your verdict the same as that as announced by the foreman?

JUROR NUMBER 37: Yes, it was.

THE COURT: Okay. Juror Number 2, was the verdict that you announced as foreman the same as your personal verdict?

JUROR NUMBER 2: Yes, it was.

THE COURT: And Juror Number 33, was your verdict the same as that as announced by the foreman?

JUROR NUMBER 33: Yes, it was.

THE COURT: The jury has been polled and has returned a unanimous verdict.

The verdict is received and the clerk will so indicate.

And at this time the members of the jury panel are excused back into the jury room.

THE COURT OFFICER: All rise, please.

(At 8:50 p.m., jury excused)

THE COURT: Okay. You may be seated.

The defendant is remanded to the custody of the Sheriff and pursuant to the provision statute the bond privileges are, at this time, at an end. The -- there's a loose end there that needs to be tidied up, however, counsel. I'd appreciate it if you'd --

MR. McDOWELL: Yes. I know the bond --





FORM SMI-25 PENGAD/INDY 1-800-631-6989

THE COURT: -- see to it to it that the -- the bond that's been posted by the relatives of the defendant is stricken so it does not remain a cloud on their title.

MR. McDOWELL: Yes, I'll prepare a discharge for that.

THE COURT: Yes. The defendant is remanded to the custody of the Sheriff, at this point in time. And court is recessed. (Indistinct).

The -- the conference to review the presentence investigation report will be March 26th. Sentencing will be April 5th at 1:00 p.m. and 1:30 respectively.

MR. McDOWELL: Can we make sure, Judge, that the jury doesn't leave with any of the exhibits because --

THE COURT: Oh, yes.

MR. McDOWELL: -- all of our exhibits are in the room.

THE COURT: Yes. That will -- I will take care of that.

MR. CHERRY: May we each retain our own exhibits, Judge?

THE COURT: I would appreciate it if you --

MR. CHERRY: Yes.

THE COURT: -- did, except that there were two that were to be returned to -- I forgot which lady it was --

MR. McDOWELL: Yeah. We've got an agreement to substitute some photocopies.

THE COURT: Right. That was done at the front end so





FORM SMI-25 PENGAD/INDY 1-800-631-6989

that's already taken care of and we'll have to get those to her immediately. I think that was M and N as I recall --

MR. McDOWELL: Yes.

THE COURT: -- for the exhibits.

All right. With that, court is recessed. And because the building is now closed we'd appreciate it if you folks could leave as quickly as possible with your gear.

THE COURT OFFICER: Court is recessed.

Tape 99B-0022-A, 2-22-99, 8:52



FORM SMI-25 PENGAD/INDY 1-800-631-6989

STATE OF MICHIGAN )
) SS
COUNTY OF BERRIEN )

I hereby certify that these transcripts, consisting of five volumes and 1523 pages, represents the complete, true, and correct rendition, to the best of my ability, of the videotapes of the proceedings as recorded in case number 98-402012-FC-H, People versus David Paul Flick, on February 16; February 17; February 18; February 19; and February 22, 1999.

I further state that I assume no responsibility for any events that occurred during the above proceedings or any inaudible responses by any party or parties that are not discernible on the video of the proceedings.

October 13, 1999

Terri L. Springman, CER-4617